IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STRATA SKIN SCIENCES, INC.** | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 24-4138** |
| | : | |
| **LASEROPTEK AMERICA CORP.,** *et al.* | : | |

| | |
|---|---|
| **McHUGH, J.** | **January 21, 2026** |

## MEMORANDUM

This is an action alleging unfair competition. In this civil action, Plaintiff Strata Skin Sciences, Inc. ("Strata"), a marketer of dermatological lasers, contends that Defendants have made false and misleading statements about both Strata's lasers, as well as their own competing dermatological lasers. With leave of Court, Strata has filed a second amended complaint, which Defendants have moved to dismiss, on substantive grounds, and for a purported lack of jurisdiction. For the reasons that follow, except as to the claim for civil conspiracy, the motion will be denied.

**I.    Relevant facts as pled**

Plaintiff Strata is a Delaware corporation with its principal place of business in Horsham, Pennsylvania. Second Am. Compl. ("SAC") ¶ 7. Strata is in the business of marketing excimer laser medical devices which are used, among other things, to treat dermatological conditions including psoriasis. SAC ¶¶ 14, 17.

Defendant LaserOptek Co. Ltd. ("Laseroptek Korea"/"LOK") is a South Korean company, and Defendant LaserOptek America Corp. ("Laseroptek") is LOK's United States subsidiary involved in marketing and selling LOK's "Pallas" laser systems in the United States. SAC ¶¶ 8–

9, 34–35.  In contrast to excimer lasers, Pallas lasers are solid-state lasers and utilize different technology for dermatological treatments.  SAC ¶¶ 34, 49–52.

Defendant C. Dalton International LLC ("CDI") is a California corporation; its sole member, Christopher Dalton, is the Vice President of Laseroptek, and a corporate vice president of LOK.  SAC ¶¶ 11, 43, 48.  LOK retained CDI and later authorized CDI to do business as "LaserOptek Americas," to serve as LOK's agent in the United States, and—together with LOK—to manage and direct sales representatives and to curate marketing and advertising materials for the Pallas lasers.  SAC ¶¶ 39–45, 47.

Reimbursement for treatment of psoriasis using excimer lasers is available under CPT Codes 96920, 96921, and 96922 ("the CPT Codes").  SAC ¶¶ 20–22.  Effective January 1, 2024, the descriptor for these codes was updated to clarify "*Excimer* laser treatment for psoriasis."  SAC ¶ 23.  The American Academy of Dermatology ("AAD") explained the addition of "excimer" was to specify the type of laser eligible for reimbursement under the CPT Codes and that "these codes are now to be used *only for excimer* laser treatment of psoriasis."  SAC ¶¶ 24–25.  Pallas lasers are not excimer lasers and Strata asserts that Pallas lasers are therefore not CPT Code compliant.

Defendant Pinnacle Health Group, Inc. ("Pinnacle") is a Pennsylvania corporation with its principal place of business in Yardley, Pennsylvania.  SAC ¶ 10.  CDI, operating as LOK's agent, entered into an agreement with Pinnacle in August 2023 to "assist with the reimbursement of providers using the Pallas Lasers under [the CPT Codes]."  SAC ¶ 59.  LOK issued a press release touting a partnership with Pinnacle regarding coding and reimbursement support.  SAC ¶¶ 59–62.

Strata claims that Defendants represented to current and prospective customers that psoriasis treatments performed with Pallas devices were reimbursable using the CPT Codes.  SAC ¶¶ 2, 53–58, 104–06.  The SAC alleges such statements were made through, among other means,

2

Laseroptek webpages, promotional materials, and direct contact with physicians. SAC ¶¶ 50, 54, 57. Defendants used these reimbursement representations in marketing to gain a market advantage over Strata. SAC ¶ 56.

At the AAD Annual Meeting in March 2024, Laseroptek, LOK, and CDI, by way of their representatives, made comparative promotional statements portraying the Pallas lasers as technologically, functionally, and clinically equivalent or superior to Strata's excimer lasers, and that these comparative claims were false or misleading as pled. SAC ¶¶ 51, 67–76, 109–12, 115–19.

Strata claims Defendants violated the Lanham Act (Counts I and II) and Pennsylvania's common law of unfair competition (Count III), and in doing so, are also liable under common law civil conspiracy (Count IV).

## II.  Standards of review

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Where, as here, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.*

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

### III. Discussion

#### A. Plaintiff sufficiently alleges jurisdiction over Defendants.

Defendants move to dismiss the Second Amended Complaint for lack of personal jurisdiction over Defendants LOK and CDI. Mot. to Dismiss at 15, ECF 77. Defendants argue that the Court lacks jurisdiction, *id.*, and Strata responds that there exists a basis for this Court to exercise specific jurisdiction over LOK and CDI, *see* Pl. Resp. to Mot. to Dismiss ("Resp.") at 19, ECF 79.

Where a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion, the plaintiff bears the burden to prove that jurisdiction exists. *See N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). To establish specific jurisdiction, a defendant must have "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). This Circuit has distilled *International Shoe*'s standard, as later refined by other Supreme Court decisions, into a three-part test: (1) a defendant must have purposefully directed its activities at the forum, (2) the litigation arises out of or relates to at least one of those activities, and, if these initial two elements are met, (3) the jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

##### 1. *Laseroptek Korea*

Defendants argue that the SAC lacks allegations of relevant contacts between LOK and Pennsylvania and therefore the exercise of personal jurisdiction over LOK would be inconsistent with due process. Mot. to Dismiss at 15. Without statements made in the forum or directed at its residents, their argument goes, it would be unconstitutional to exercise jurisdiction. *Id.* at 17. In

4

a previous order granting leave to file the SAC, I noted that Strata has a "colorable argument as to this Court's specific personal jurisdiction over LOK." *See* Order at 3, ECF 66. Now that the matter is squarely in dispute, I find that Strata has sufficiently pled facts permitting the exercise of jurisdiction over LOK.

LOK's alleged business relationship with Independent Sales Representative ("ISR") Mary Ross-Robertson is sufficient to meet the requirements for specific jurisdiction. *See* SAC ¶ 36. Defendants themselves submitted the ISR Agreement between LOK and Ms. Ross-Robertson, which granted her an exclusive right-to-sell within Pennsylvania in exchange for her obligation to promote and sell Laseroptek lasers in her assigned territories. *See* ISR Agreement at 4, 16, ECF 64-2. "[A] corporation can purposefully avail itself of a forum by directing its agents . . . to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014).

Defendants counter that the ISR Agreement expressly disclaims a binding agency relationship, and therefore Ms. Ross-Robertson's actions may not be imputed to LOK for purposes of this jurisdictional analysis. *See* Defs.' Reply Br. ("Reply") at 11–12, ECF 87. Contractual disclaimers of agency are not dispositive. *See First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 652 (3d Cir. 1998) (finding that the contractual language is not dispositive of an agency relationship, rather "the parties' total relationship" controls). Such a dispute is more appropriately decided upon a fully developed factual record.

Pursuant to her contract with LOK, Ms. Ross-Robertson allegedly worked in Pennsylvania, conducted business activities in Pennsylvania, edited marketing materials in Pennsylvania, and solicited sales of Pallas lasers in Pennsylvania. ISR Agreement at 16; Resp. at 20–21. With this agreement and the actions of its sales representative, LOK could be considered to have "purposefully directed its activities at the forum." The first element is satisfied.

The second element is also adequately alleged. As an ISR, Ms. Ross-Robertson was instructed by CDI, an agent of LOK, to disseminate the coding advertisements and sell the products that sit at the heart of this case. *See* SAC ¶ 36.

Finally, I conclude that exercising specific jurisdiction over LOK comports with fair play and substantial justice. When jurisdiction is otherwise constitutional, a defendant must "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Relevant considerations include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 476–77 (internal quotations omitted).

Here, Strata credibly alleges that LOK has established business relationships in the forum to sell its product. SAC ¶¶ 10, 59–66. Strata is itself a Pennsylvania company, and therefore the Commonwealth has a keen interest in vindicating Plaintiff's alleged injuries. *See O'Connor*, 496 F.3d at 325 ("Pennsylvania has a 'manifest interest in providing effective means of redress' when a foreign corporation reaches into the state and solicits its citizens." (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957))). It is of course burdensome for a foreign party to defend itself in United States courts, but here it is not so extreme a burden on LOK as to make jurisdiction unreasonable, especially given LOK's contacts with the forum as well as advances in communications technology. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294

(1980). I conclude that Defendants have not shown that jurisdiction would be so unreasonable or unfair that I should dismiss the case, therefore I will exercise personal jurisdiction over LOK.[1]

### 2. CDI

Defendants similarly argue that neither general nor specific jurisdiction exists over CDI. Mot. to Dismiss at 19. I again disagree. Satisfying the first element, Strata adequately asserts that CDI contracted with Pinnacle, a Pennsylvania company, submitted payment to Pinnacle's Pennsylvania bank account, and caused injury in Pennsylvania to Strata. SAC ¶¶ 59, 106. While each contact standing on its own may present a weaker argument for jurisdiction, in totality they support a finding of jurisdiction. *See McGee*, 355 U.S. at 223 (finding that a contract may support jurisdiction so long as it creates a "substantial connection" with forum state); *N. Penn Gas Co.*, 897 F.2d at 691 (holding payment into a forum state pursuant to a contract supports a finding of personal jurisdiction).

Defendants' invocation of *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), is misplaced. They accurately represent that the Court there found that a non-resident defendant merely contracting with a resident of the forum state was insufficient to establish personal jurisdiction. *Id.* at 268. But in *Bristol-Myers Squibb*, the non-defendant resident corporation was not alleged to have engaged with the defendant in the wrongful conduct giving rise to the suit. *Id.* Here, Strata alleges that Defendants CDI and Pinnacle collaborated in creating

---

[1] The parties also dispute whether this Court has jurisdiction as analyzed under the *Calder* Effects Test. *See* Reply at 15; Pl. Sur-Reply at 1, ECF 89. I refrain from such an analysis because *Calder* need only be applied where jurisdiction cannot be satisfied under the traditional test. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998); *see also Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 357 n.3 (E.D. Pa. 2016) (McHugh, J.) (explaining "uncertainty among district courts about precisely how the specialized Calder test relates to the traditional test for jurisdiction").

and distributing the Coding Advertisements. SAC ¶¶ 59–66. This then satisfies the second element because the Coding Advertisements form a basis for Plaintiff's claims.

Lastly, Defendants do not argue that the exercise of jurisdiction over CDI would offend traditional notions of fair play, claiming instead that such an argument is unnecessary given their victory on the first two elements. *See* Mot. to Dismiss at 21 n.4. Had they made the argument, I would disagree. CDI purposefully availed itself of the Pennsylvania market and could reasonably anticipate being haled into court based on claims arising from those activities within the Commonwealth. In addition, Plaintiff has a strong interest in litigating this matter in its home state and Pennsylvania has a strong interest in providing a forum for its injured residents. This Court therefore has personal jurisdiction over CDI.

### B. Plaintiff states a claim for false advertising and unfair competition concerning the CPT codes.

In Count I, Strata brings a claim for false advertising under Lanham Act Section 43(a), 15 U.S.C. § 1125 (a)(1)(B), in reference to Defendants' statements to current and potential customers that treatment for psoriasis using Pallas lasers was reimbursable using CPT Codes 96920–96022 ("the CPT Codes"). SAC ¶ 104. "[Lanham Act Section] 1125(a)(1) creates a federal remedy against those who falsely advertise or associate their products with others, be it through false or misleading descriptions, statements of fact, or 'designation[s] of origin.'"[2] *Westbrook Monster*

---

[2] 15 U.S.C. § 1125(a)(1) reads as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>     . . .

*Mix Co. v. Easy Gardener Prods., Inc.*, No. 23-2952, 2024 WL 816243, at *5 (E.D. Pa. Feb. 27, 2024) (McHugh, J.) (quoting 15 U.S.C. § 1125(a)(1)); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). To state a claim for false advertising, a plaintiff must plausibly allege:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods travelled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) (citation omitted).

Defendants seek to dismiss this count. They claim that the American Medical Association and its CPT Panel removed the word "excimer" from the Code descriptor following the filing of this litigation, and that this removal "resolved any ambiguity" that the Codes were never intended to be limited in applicability by laser type and removing any alleged stain of falsity from Defendants' statements. Mot. to Dismiss at 21–22.

As to the first element of a Lanham Act claim, the SAC alleges Defendants communicated to current and prospective customers that psoriasis treatments performed with Pallas devices (non-excimer lasers) were CPT Code compliant and reimbursable, and that such statements were false at the time. SAC ¶¶ 104, 26–27, 30–32, 58, 65. Defendants rely on factual contentions that go

---

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

beyond the scope of this motion to dismiss. I also note that the prospective nature of changes to the CPT Codes—effective in 2027—may not necessarily defeat Plaintiff's claims based upon the previous protocol. At this early stage, a district court does not determine the veracity of a purportedly false statement but merely decides whether a complaint plausibly alleges falsity. Accepting Plaintiff's allegations as true, the SAC alleges a plausible basis for falsity.

Second, the SAC sufficiently alleges a tendency to deceive, if not "actual deception," in so far as Defendants' assertions of CPT Code compliance for their Pallas lasers were false and were communicated to customers. SAC ¶¶ 63–66. The "intended audience" is alleged to be physicians—including Strata's current and prospective customers—who are evaluating whether to purchase or use Pallas lasers as an alternative to Strata's excimer lasers. SAC ¶¶ 53–58, 63. The statements go directly to whether physicians can receive reimbursements for use of Pallas lasers, and the SAC alleges that Defendants disseminated these statements to customers via website, industry events, and directly to physicians. *Id.* Drawing reasonable inferences in Plaintiff's favor, if physicians are told that Pallas lasers are indeed compliant with the CPT Codes, a substantial portion of that audience could be misled into believing the treatments are in fact equally reimbursable with Pallas lasers as with Strata's excimer lasers.

Third, Strata adequately pleads materiality. "The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *N. Am. Med. Corp. v. Axiom Worldwide Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008) (citation omitted); *see also Carpenter Tech. Corp. v. Allegheny Techs., Inc.*, No. 08-2907, 2011 WL 3652447, at *4 (E.D. Pa. Aug. 18, 2011) ("The deception element of false advertising is closely related to the materiality component because deceptive statements must influence purchasing decisions to be actionable." (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990))). Here, while

the SAC may not explicitly assert that the purportedly false statements concerning CPT Codes were material, it naturally follows that the potential for reimbursement is a material factor in a physician's purchasing decision. Materiality is further supported by LOK's own actions; as alleged in the SAC, LOK partnered with Pinnacle "to enhance CPT coding support for its U.S. customers." SAC ¶¶ 59–60. Such a partnership reinforces the plausibility that the coding and reimbursement assurances were used as a sales tool with customers. *See also Church & Dwight Co. v. SPD Swiss Precision Diagnostics*, 843 F.3d 48, 70–71 (2d Cir. 2016) (finding that a statement is material when "the defendant and plaintiff are competitors in the same market and the falsity of the defendant's advertising is likely to lead consumers to prefer the defendant's product over the plaintiff's").

Fourth, the statements regarding the CPT Codes traveled through interstate commerce. The false and/or misleading misrepresentation must be made in interstate commerce to state a claim under the Lanham Act. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 164–66 (3d Cir. 2001). Strata alleges that Defendants posted false information regarding the CPT Codes on their website, SAC ¶ 50, and while the complaint does not explicitly claim said webpage was accessible across state boundaries, this conclusion may be inferred by the nature of the internet.

Fifth—and finally—Plaintiff plausibly alleges injury. The SAC pleads that the reimbursement representations misstate the "nature, characteristics, and qualities" of Pallas lasers in a manner that disadvantages Strata in the marketplace by causing confusion among current and prospective customers. SAC ¶¶ 104–06.

All elements having been met, I find that Strata states a plausible claim for false advertising concerning the CPT Codes under the Lanham Act. Defendants' motion to dismiss Count I is therefore denied.

Strata also brings a claim for Common Law Unfair Competition (Count III) regarding the CPT Codes, SAC ¶¶ 114–15, which Defendants likewise move to dismiss, Mot. to Dismiss at 7. "Under Pennsylvania law, the elements necessary to prove unfair competition through false advertising parallel those elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce." *KDH Elec. Sys. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 807 (E.D. Pa. 2011) (citing *Pa. State Univ. v. Univ. Orthopedics, Ltd.*, 706 A.2d 863, 870–71 (Pa. Super. Ct. 1998)). My analysis under the Lanham Act applies equally to Strata's common law unfair competition claim and I therefore find that the SAC plausibly states a claim under that law as well. Defendants' motion to dismiss Count III is also denied.

### C. Plaintiff states a claim against individual Defendants.

Defendants argue that the SAC fails to plead defendant-specific false statements and impermissibly relies on "group pleading." Mot. to Dismiss at 8, 22–23. They contend Strata attributes the allegedly misleading representations to "Defendants," "LaserOptek, LOK, and CDI," or to unspecified "agents" and "representatives," without identifying which entity made which statement—thereby depriving Defendants of the required fair notice of the conduct alleged and their potential grounds for liability. *Id.* at 23–24.

Strata counters that the SAC sufficiently alleges specificity by asserting instances where "Defendants, acting individually or through their agents, engaged in false advertising and unfair competition." Resp. at 35. Furthermore, Strata argues, Defendants are on "fair notice" to such a degree that "they have engaged in a protracted shell game to deliberately conceal information." *Id.*

I find that the SAC sufficiently alleges false advertising on the part of each defendant. Some of these allegations come explicitly, that is, in the form of specific actions of specific

Defendants.  *See, e.g.*, SAC ¶ 50 ("LaserOptek's website, its advertising and promotional materials, and even its regulatory filings specifically contrast its Pallas laser systems with excimer lasers."); SAC ¶ 65 ("Pinnacle has issued the following false and misleading statement [concerning the CPT Codes] to current and prospective customers of Plaintiff.").  And other parts of the pleading are structured as group allegations because the purported actions were taken as a group, including "representatives of LaserOptek, LOK and CDI" hosting promotional sessions at an annual industry meeting where allegedly false statements were made.  *See* SAC ¶¶ 21, 67–74.

Plaintiff is correct to point out that, to the degree that there is a lack of specificity, at least some of the fault may be attributed to Defendants, *see* Resp. at 36, who previously "positioned the case to give Plaintiff the false impression that the correct corporate entities were already before the Court," Order at 2; *see also id.* at 2 n.1.  Laseroptek, LOK, and CDI have overlapping agreements, agents, and authorities.  Mr. Dalton, for example, is the sole member of CDI which is authorized by LOK to be its agent in the United States doing business as Laseroptek, and he is also a Vice President of LOK.  SAC ¶¶ 42–43.

Accepting Strata's allegations as true and drawing all inferences in its favor, I must conclude that Strata has sufficiently stated a claim against each defendant.  I will address below the additional peripheral arguments Defendants present alongside their "group pleading" rationale.

    1. *Laseroptek Korea*

Defendants also argue that insofar as the false advertising allegations are made against LOK, they are attributed to LOK's ISRs and, due to the ISRs contractual designation as non-agents, LOK is not liable for any ISR statement.  As discussed above, contractual negation of an agency relationship is not dispositive.  *See First Liberty Inv. Grp.*, 145 F.3d at 652 (finding that the contractual language is not dispositive of an agency relationship, rather "the parties' total

13

relationship" controls). This relationship is heavily disputed by the parties and is therefore inappropriate for disposition at this stage.

### 2. *Pinnacle*

Defendants claim that the SAC does not state claims of false advertising and unfair competition against Pinnacle because it does not allege that Pinnacle engaged in commercial speech. Mot. to Dismiss at 27.[3] "'[E]very circuit court of appeals to address the scope of [Lanham Act claims for false advertising and false association] has held that they apply only to commercial speech.'" *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504 (E.D. Pa. 2018) (McHugh, J.) (quoting *Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013)). To determine whether speech is commercial, the Third Circuit requires courts to assess whether the speech (i) is an advertisement, (ii) refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008). Ultimately, the commercial speech inquiry requires "a 'commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech.'" *Id.* (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64 (1983)).

The SAC attributes to Pinnacle two categories of statements: (1) correspondence with doctors asserting that psoriasis treatment using non-excimer lasers is reimbursable under the CPT Codes, and (2) a one-page Coding Reference asserting the same and directed towards Strata's current and prospective customers. SAC ¶¶ 63–65. Defendants argue that neither category meets the threshold for commercial speech. Mot. to Dismiss at 28. First, they assert that the Coding Reference does not propose a commercial transaction, nor promotes any product or service, and

---

[3] Defendants move to dismiss Count II's allegation of false advertising against Pinnacle, but Strata only brings Count II against Laseroptek, LOK, and CDI. I will assume Defendants intend to challenge Count I's allegation of false advertising, which Strata brought against all Defendants.

"because Pinnacle does not sell UVB lasers, Pinnacle did not have an economic motivation for the speech." *Id.* (internal quotation omitted).

Whether Pinnacle engaged in commercial speech depends in substantial part on how one characterizes the function and audience of the communications. The SAC pleads that Pinnacle's statements were conveyed to current and prospective customers and concerned reimbursement for non-excimer devices—an issue plausibly material to a provider's decision to purchase a Pallas laser. Pinnacle was hired by CDI/LOK "to provid[e] exceptional Reimbursement Coding support to its U.S. market customers utilizing the [Pallas lasers]." SAC, Ex. 2 ("Press Release"), ECF 67-2. Viewing the issue in its totality, the allegations tend to support an inference that the Coding Reference was intended to promote a commercial transaction (*i.e.*, purchase or continued use of Pallas lasers) rather than merely to provide neutral coding commentary. It is of no matter that Pinnacle does not directly sell UVB lasers; its economic motivation lies in its agreement to assist the company selling said lasers with customer issues, thereby making the Pallas lasers a more attractive product. Pinnacle is financially interested in the sale of Pallas lasers.

Next, Defendants argue that Pinnacle's correspondence with doctors is not actionable as it represents private communication. Mot. to Dismiss at 29. Because I find that Pinnacle's Coding Reference suffices for commercial speech and therefore states a claim, I refrain from conducting this now-extraneous analysis. *See also Refundo, LLC v. Drake Enters., Ltd.*, No. 13-643, 2013 WL 1750016, at *13 (D.N.J. Apr. 22, 2013) (finding inappropriate to decide on a motion to dismiss whether a statement was disseminated sufficiently to constitute advertising under the Lanham Act).

### 3. *Laseroptek*

Finally, Defendants again raise their argument that Laseroptek did not actually exist when most of the statements at issue were made, and therefore the claims against it should be dismissed.

Mot. to Dismiss at 29–30.  They claim that Laseroptek was incorporated on May 28, 2024, and that no statement was attributed to it between that date and the date this suit commenced.  *Id.*  As noted in my previous Order denying the first motion to dismiss, "Defendants' Answer filed in November *admitted* that Laseroptek made a variety of statements from as early as 2022. *See* Answer ¶¶ 30, 31, 33, 34, 42, ECF 38."  Order at 2 n.1.  That admission alone creates a factual issue not properly resolved at this stage.

Because the SAC plausibly alleges Laseroptek's existence and responsibility for false statements, as well as Defendants' admittance of existence, the motion is denied with respect to dismissal of Counts I, II, and III.

### D. Plaintiff does not state a claim for civil conspiracy.

Strata brings suit against all Defendants for acting in concert to injure Plaintiff by coordinating and conducting unlawful false and misleading advertising for Defendants' Pallas lasers.  SAC ¶¶ 121–28.  Strata claims Defendants jointly disseminated false statements to Strata's actual and prospective customers that the psoriasis treatments performed with Pallas lasers are reimbursable under the CPT Codes, and further made false statements touting the Pallas lasers' equivalence or superiority compared to Plaintiff's lasers.  *Id.*  The alleged conduct is unlawful in so far as it purportedly violates the Lanham Act and Pennsylvania's common law rule against unfair competition.  *Id.*

Defendants move to dismiss this count, arguing that Pennsylvania civil conspiracy requires an allegation that conspirators acted with malice and that Plaintiff made no such allegation.  Mot. to Dismiss at 22.  Specifically, they argue that malice is present only where "the sole purpose of the conspiracy is to cause harm to the party who has been injured."  *Id.* (quoting *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423 (E.D. Pa. 2014) (quotation omitted), *aff'd*, 625 F. App'x 594

16

(3d Cir. 2016)). Plaintiff argues that the "sole purpose" requirement is a minority interpretation. Resp. at 33–34. I disagree. While Defendants failed to cite recent relevant authority, they are correct: "malicious intent must be the sole purpose of the conspiracy." *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 172 (3d Cir. 2025) (internal quotation omitted); *see also Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979); *Commonwealth v. TAP Pharm. Prods.*, 36 A.3d 1112, 1184–85 (Pa. Commw. Ct. 2011) (collecting cases).

Plaintiff faces an insoluble logical dilemma. Strata's allegations underlying the civil conspiracy claim—that is, the Lanham Act and unfair competition claims—are supported by their argument that Defendants' actions were for purposes of "marketing and selling Pallas lasers" and "gain[ing] a market advantage." SAC ¶¶ 38, 56; *see also id.* ¶¶ 39, 44–47, 57, 59–62. While these arguments support the underlying claims, they simultaneously undercut the position that Defendants' sole purpose was malice. Strata cannot have it both ways. The SAC neither alleges malice as the sole purpose of the conspiracy, nor can it be inferred. And although the Federal Rules of Civil Procedure allow for alternative pleading, allegations that such highly sophisticated commercial entities as Defendants here were driven by anything other than economic advantage lacks plausibility. The civil conspiracy claim will be dismissed with prejudice.

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be denied, except as to Count IV for civil conspiracy. An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge