**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STRATA SKIN SCIENCES, INC.** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 24-4138** |
| | : | |
| **LASEROPTEK AMERICA CORP., *et al.*** | : | |

**McHUGH, J.** **August 19, 2026**

**MEMORANDUM**

This is a commercial dispute in which Strata Skin Sciences, Inc. ("Strata"), a marketer of dermatological lasers, contends that LaserOptek ("LOA") made false and misleading statements about both Strata's lasers, as well as their own competing dermatological lasers. LOA now brings various counterclaims, including antitrust violations, defamation, and false marking. Strata and its CEO, Dolev Rafaeli, move to dismiss all but one count of the counterclaims. For the reasons that follow, the motion will be granted in part and denied in part.[1]

## I. Relevant Background[2]

LOA submits seven counterclaims. Counts I and II allege monopolization and attempted monopolization against Strata under section 2 of the Sherman Act. Count III claims defamation by Strata and Rafaeli based upon several statements and Count IV alleges commercial disparagement based on those same statements. Count V alleges false marking under 35 U.S.C. § 295 stemming from Strata and Rafaeli's assertions that Strata holds certain patents. Count VI accuses Strata and Rafaeli of false advertisement for those patent statements under the Lanham Act. Finally, Count VII alleges unfair competition by Strata and Rafaeli for the behavior

[1] This memorandum uses the pagination as supplied by the CM/ECF docketing system.

[2] For a more fulsome factual background of this litigation, see *Strata Skin Scis., Inc. v. LaserOptek Am. Corp.*, No. 24-4138, 2026 WL 181486, at *1–2 (E.D. Pa. Jan. 21, 2026).

underlying Counts III and IV. Strata and Rafaeli move to dismiss all counts except Count VI.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

### A. Monopolization and Attempted Monopolization

Counts I and II charge Strata with monopolization and attempted monopolization of the national market for UVB medical lasers with FDA clearance to treat inflammatory skin conditions including psoriasis. *See* Countercl. ¶¶ 122–45, ECF 95. LOA claims that Strata controls more than three-fourths of this market and that Strata and LOA's lasers are in competition. It claims that Strata has improperly employed meritless litigation to maintain this market position. Strata asserts that it is protected under *Noerr-Pennington* immunity and, alternatively, that LOA failed to adequately plead antitrust standing. I agree on both fronts.

Strata argues that it is immune from antitrust liability under the *Noerr-Pennington* doctrine, an immunity grounded in the First Amendment's right to petition courts. *See* Strata Mot. to Dismiss ("Strata Mot.") 20–21, ECF 110; *Prof'l Real Est. Inv'rs v. Columbia Pictures Indus.* ("*PRE*"), 508 U.S. 49, 56–57 (1993). An exception to *Noerr-Pennington* immunity applies when the suit "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *PRE*, 508 U.S. at 51 (quotation omitted). Under *PRE*'s two-part test, LOA must first show that the challenged suit is objectively baseless, meaning that no reasonable litigant could realistically expect to secure favorable relief. Strata Mot. 21 (quoting *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 148 (3d Cir.

2017) and *PRE*, 508 U.S. at 60–61). If this objective prong is satisfied, the court then moves to analyzing subjective motivation. *Id.* The objective inquiry, as framed by Strata, only looks at whether the party had probable cause at the time of filing. *See In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 582 (E.D. Pa. 2018); Strata Reply 9, 15–16, ECF 126.

Strata maintains that post-filing developments are irrelevant as a matter of law, including the American Academy of Dermatology's December 2024 Code Change Application and the February 2025 CPT Editorial Panel summary. Strata Reply at 15. It contends that it had probable cause at the time of filing its suit, as demonstrated by its claims surviving two motions to dismiss, LOA's stipulation to Strata's injunctive relief motion, and my rejection of LOA's request to vacate that stipulation. Strata Mot. 24–25. Lastly, Strata contends that this question of *Noerr-Pennington* immunity may be resolved at the pleading stage because objectivity depends on the court's assessment of probable cause and not on the litigant's belief. Strata Reply 12–14.

LOA argues that it adequately pleads the sham litigation exception to *Noerr-Pennington* under the *PRE* framework. LOA Resp. 17, ECF 123. It attempts to narrow the scope of the issue by specifying that it is *this* present lawsuit along with Strata's ongoing statements that suffice for anticompetitive conduct, representing it pleads the earlier suits only as evidence of subjective motivation. *Id.* As to the *PRE* test, LOA insists that survival of Strata's claims against it on motions to dismiss establishes only plausibility, and that suits surviving preliminary injunction, summary judgment, or settlement have been found to be objectively baseless. *Id.* at 19.

The party invoking the sham exception to *Noerr-Pennington* bears the burden of showing that the suit was a sham. *PRE*, 508 U.S. at 60. This exception should be construed narrowly and presents an "uphill battle" for those who invoke it. *FTC v. AbbVie Inc.*, 976 F.3d 327, 361 (3d Cir. 2020). Objective baselessness is found where a litigant lacks probable cause. *PRE*, 508 U.S. at

62–63; *Brandywine Vill. Assocs. v. Carlino E. Brandywine, L.P.*, No. 16-5209, 2023 WL 4918326, at *4 (E.D. Pa. Aug. 1, 2023), *aff'd*, No. 23-2457, 2024 WL 3649569 (3d Cir. Aug. 5, 2024). Although whether the circumstances alleged in the complaint are true is an issue of fact, the controlling standard is whether, once assumed true, they amount to probable cause, and that is a question for the court. *PRE*, 508 U.S. at 62; *Wellbutrin*, 865 F.3d at 151 (citing *Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878)). Where there is no genuine dispute over the predicate facts, a court may resolve objective baselessness as a matter of law on a motion to dismiss, because the question is not what the petitioner thought but what the court concludes objectively. *See Brandywine*, 2023 WL 4918326, at *4 (citing *PRE*, 508 U.S. at 63).

LOA has not plausibly alleged that Strata's false advertising suit is objectively baseless and therefore Counts I and II fail as a matter of law because Strata is protected by *Noerr-Pennington* immunity. "A court can decide the question as to whether the state court proceeding was 'objectively baseless' on a motion to dismiss because the question is not whether the defendant thought the facts constitute probable cause, but whether the court thinks they did, objectively." *Id.* at *4; *see also Remicade*, 345 F. Supp. 3d at 583–84 (dismissing plaintiff's sham litigation claims at the motion to dismiss stage).

The predicate facts here are the substance of the CPT code descriptors and the AMA's guidance as both stood in August 2024. The descriptors were amended in January 2024 to add the word "Excimer," so that they read "Excimer laser treatment for psoriasis." *See* Strata Reply 14. In June 2024, the AMA issued CPT Assistant guidance explaining that Codes may be used only for treatments using excimer lasers. *Id.* LOA does not deny that the AMA issued such guidance, disputing only what it means and how it should be understood in light of subsequent events. *See* LOA Resp. 20. Considering the materials issued by the AMA, a reasonable litigant could believe

that there existed a realistic chance that a false advertising claim could succeed. The issue is whether the "content was sufficient to establish probable cause for the objective baselessness inquiry." *Wellbutrin*, 868 F.3d at 151. The post-filing developments that LOA mentions are irrelevant because the question is whether the case was a sham at the time it was filed. *See Remicade*, 345 F. Supp. 3d at 581 (citing *PRE*, 508 U.S. at 32).[3]

Because Strata prevails on the objectivity prong, I need not reach the subjective analysis. And because Strata prevails as to *Noerr-Pennington* immunity, I need not address antitrust standing. Strata's motion is granted as to Counts I and II, which will be dismissed.

**B. Defamation**

To prevail on a claim for defamation under Pennsylvania law, a plaintiff must establish:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

*Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (quoting 42 Pa. C.S. § 8343(a)). Whether a statement is capable of defamatory meaning is a question of law for the court. *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). A court determines whether a statement, read as a whole and in context, was reasonably capable of conveying the meaning the plaintiff ascribes to it. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (citing *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987)). Truth, including substantial truth, is an affirmative defense and the subsequent question is whether the statement

---

[3] Although I reject LOA's position, it is correct in arguing that the earlier denials of motions to dismiss do not conclusively establish probable cause. *See FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 938 (Fed. Cir. 1995) (stating that even a successful preliminary injunction "does not necessarily preclude a court from concluding that litigation was baseless"); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 317 (E.D. Pa. 2011) (finding that a grant of a preliminary injunction did not establish that the original claim was baseless).

would have had a different effect than the pleaded truth would have produced. *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982). Truth often cannot be decided until the parties develop the facts, but a court may decide the issue on a motion to dismiss when the pleading itself, including attached exhibits, shows the statement was true. *See Pelagatti v. Cohen*, 536 A.2d 1337, 1346 (Pa. Super. Ct. 1987); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Statements a party makes outside of court, as to investors, receive only a qualified privilege. *Pelagatti*, 536 A.2d at 1345–46. That fair reporting privilege covers descriptions of court proceedings if the description is accurate and complete, or a fair summary of it. *See Medico v. Time, Inc.*, 643 F.2d 134, 138–39 (3d Cir. 1981). A speaker loses the privilege by describing the proceeding inaccurately, leaving out enough to mislead, or including a detail that makes the account sting more than the proceeding itself would. *Id.* at 136. The court decides whether the privilege applies at all; whether the speaker lost the privilege is usually a question for the jury. *See First Lehigh Bank v. Cowen*, 700 A.2d 498, 503 (Pa. Super. Ct. 1997). The allegedly defamatory statements fall into five categories and Strata moves to dismiss each.

1. *The statements that Pallas lasers "cannot be billed" and are "not reimbursable" using Codes 96920-22, and the "code descriptors dating all the way back to 2012" are substantially true on the face of the complaint.*

LOA pleads that "Strata and Mr. Rafaeli falsely stated to Strata shareholders, the market, and the general public that LOA's Pallas lasers 'cannot be billed' and are 'not reimbursable,'" and that "the 'specific code descriptors dating all the way back to 2012'" make that clear. Countercl. ¶¶ 9, 89, 147. Strata contends that this group of statements is true, or alternatively, that they are at least substantially true, and that the truth appears on the face of the Counterclaims. It relies on AMA guidance that has restricted the CPT Codes to excimer treatments since 2012 (including the 2012 and 2016 CPT Assistant publications LOA itself attached as exhibits), the June 2024 CPT Assistant Q&A defining an excimer laser as one using pulsed gas, and the October 2025 letter

from the AMA's Director of CPT Content Management confirming that the June 2024 guidance requires no revision. Strata Mot. 35–33; Countercl. ¶¶ 44–46, 49. Strata emphasizes that LOA's Pallas laser is not an excimer laser, as conceded by LOA, and therefore any statement that Pallas treatments cannot be billed under the Codes cannot be false. Strata Mot. 33; Countercl. ¶ 29 n.7; LOA Ans. ¶ 49. Because these materials are exhibits or incorporated in the pleading, Strata argues I may resolve the issue of truth now rather than wait for discovery. Strata Reply 20. In contrast, Strata maintains the remark is a fair and accurate recitation of its own claims in this litigation and therefore privileged. Strata Mot 23–24.

LOA responds that Strata has impermissibly reframed the statements, reasoning that Rafaeli did not say the Pallas is non-reimbursable under the CPT Codes specifically, but instead said it is "not reimbursable" as a general statement. LOA Resp. 28. LOA alleges that Pallas treatment has always been reimbursable at payors' discretion under other CPT codes therefore rendering the assertion false. *Id.* at 25; Countercl. ¶ 9. As to the Codes themselves, LOA alleges multiple things: that the AAD advised the CPT Panel that the Codes have covered Pallas treatment since 2017; that the Panel adopted the AAD's code change application in February 2025, replacing "Excimer laser treatment" with "Laser treatment, 308–312 nanometer wavelength;" and that the Panel thrice declined Strata's requests to restore "excimer." *See* LOA Resp. 25; Countercl. ¶¶ 55–71. On that record, LOA argues, the parties genuinely dispute what the Codes mean, and substantial truth is not a question the Court may resolve under Rule 12(b)(6). LOA Resp. 21–28.

I agree with Strata as to this first group because the substantial truth of the challenged remark is apparent from the Counterclaims. Truth is an affirmative defense, and I may consider it at this stage only if its basis appears on the face of the pleading, including attached exhibits. Averment of an affirmative defense does not automatically create a factual issue, but when an

affirmative defense is "apparent on the face of a complaint," it may be appropriate for a court to grant dismissal. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *see also Schmidt*, 770 F.3d at 249; *Pelagatti*, 536 A.2d at 1346. That condition is satisfied here. LOA attaches the 2016 CPT Assistant publication describing laser treatment of psoriasis as treatment that "employs excimer lasers," Countercl. Ex. G at 4, ECF 95-7, and incorporated the June 2024 CPT Assistant Q&A defining an excimer laser as one that "employs pulsated gas to generate ultraviolet light at specific wavelengths," Countercl. ¶¶ 46, 49. And LOA concedes the fact that the Pallas lasers are not an excimer laser. *See* LOA Ans. ¶ 49 ("Defendants admit that the Pallas Lasers are not technically excimer lasers[.]").

Against those materials, the pleaded truth would not have produced a different effect on the mind of the average listener. *See Dunlap*, 448 A.2d at 15; *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991). LOA contends that Rafaeli was selective in his retelling of the guidance's history, but a speaker need not justify every word, and such an inaccuracy does not convert a substantially accurate statement into a false one. *Masson*, 501 U.S. at 516–17. Strata's Motion is granted and LOA's claim is dismissed as to this first category of statements.

2. *LOA adequately pleads that Strata defamed by saying the Court "awarded an injunction against LaserOptek."*

LOA pleads that Strata and Rafaeli defamed it by characterizing a joint stipulation as an injunction entered against LOA. LOA pleads multiple statements: in its October 2025 Press Release, Strata told the market that this Court had "ruled in STRATA's favor" and "partially granted STRATA's motion for preliminary injunction"; repeated the claim on a November earnings call, saying that "an injunction [was] issued"; and again in a December investor presentation that Strata was "awarded an injunction against LaserOptek." Countercl. ¶¶ 13, 146.

Strata does not dispute that the order was a joint stipulation but contends that these

descriptions are fair and substantially accurate summaries of the proceedings, in that it initially moved for a preliminary injunction but withdrew that motion when I accepted the parties' joint stipulation "and ordered that LaserOptek, its agents, and the other named Defendants are enjoined until further notice." Strata Mot. 34. According to Strata, the material portions of the statements are accurate because "the Court entered an order that provided STRATA, in part, the relief it sought via its motion for preliminary injunction, which STRATA withdrew in exchange for Defendants' agreement to the stipulated injunction." *Id.* at 35.

LOA is correct that I never ruled on the motion, let alone granted it, because Stata withdrew the motion via the joint stipulation. LOA Resp. 10–11, 26. In fact, I criticized Strata for the way in which it portrayed the stipulation:

> Such statements are ill-advised on Strata's part. Although in practical terms the Stipulation provided it with the relief it sought by injunction, a stipulation is a voluntary agreement reached by the parties, even when it is approved by the Court. A stipulation is enforceable, but to characterize it as a ruling is misleading. Strata is instructed to cease characterizing the Stipulation as an injunction issued by the Court.

*Strata Skin Scis., Inc. v. LaserOptek Am. Corp.*, No. 24-4138, 2026 WL 1010465, at *3 (E.D. Pa. Apr. 14, 2026). LOA argues the statements are neither true nor privileged because the docket "is not open to interpretation" and Rafaeli's characterizations are inaccurate. LOA Resp. 31–32.

Strata's Motion will be denied as to the second category of statements. These statements are capable of defamatory meaning because they imply that the Court found that LOA had engaged in wrongful conduct. *See U.S. Healthcare*, 898 F.2d at 924; *see also I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 424–25 (E.D. Pa. 2020). What matters is "the substance, the gist, the sting," of the statement. *Masson*, 501 U.S. at 516–17 (quotation omitted); *Dunlap*, 448 A.2d at 15. The parties negotiated a stipulation and withdrew the motion before I could rule. To say otherwise is to assert that there was an adjudication when there was merely a

concession. Mischaracterizing a party's posture in a proceeding can be actionable. *See Webster v. Lancaster Newspapers, Inc.*, 878 A.2d 63, 73–74, 75 n.5 (Pa. Super. Ct. 2005) (finding that falsely characterizing a litigant's posture in a court proceeding is capable of defamatory meaning). The remaining elements of defamation, publication application, fault, and harm, are also adequately pleaded.

Strata alternatively raises the fair reporting privilege. It fulfils its burden to establish that a privileged occasion exists, because the statements purported to report the entry of the stipulation. *See First Lehigh Bank*, 700 A.2d at 503. The burden then shifts to LOA to establish abuse, which is ordinarily a question of fact for the jury unless the evidence allows for only one conclusion. *Id.* LOA plausibly alleges abuse. Strata reported an injunction but omitted the voluntary agreement and subsequent withdrawal of its motion—so its report could be construed as one that "misrepresent[s] the proceeding." *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1088 (3d Cir. 1988) (quoting Restatement (Second) of Torts § 611 cmt. f (1977)). And Strata's assertion that the Court "ruled in STRATA's favor" and "awarded" the injunction could be viewed as the kind of affirmative embellishment that warrants the loss of privilege. *Sciandra v. Lynett*, 187 A.2d 586, 600 (Pa. 1963) (finding privilege is lost through "exaggerated additions, or embellishments").

LOA has plausibly alleged that the statements are defamatory. Neither substantial truth of the statements nor the fair reporting privilege is established on the face of the pleading, so this claim may proceed.

3. *LOA adequately pleads that "the judge" has found information disseminated by LOA about Pallas and Strata lasers to be "fraudulent information" are defamatory statements.*

LOA alleges that Mr. Rafaeli falsely stated that I found information disseminated by LOA about Pallas and Strata lasers to be "fraudulent information." Strata points to a transcript where Rafaeli was answering investor questions about the calculation of Strata's damages and said:

> As a side note, since then, at least with most of these -- the bigger accounts, we were able to take them back. However, that has caused STRATA not only the immediate revenue loss from these accounts that moved over to LaserOptek devices, but also potential future revenue because when conflicting and confusing and more accurately described by the judge as fraudulent information is disseminated in the market, that creates confusion with the customers. Now I'm not going to go into the specific damages, but these damages are in the 8-digit range when it comes to calculation. The damages experts have come up with the relevant theories . . . .

Strata Mot. 35; Strata Aug. 2025 Earnings Call Tr. at 11, ECF 95-1. Strata argues that Rafaeli did not tell investors that this Court had made any findings but instead gave a non-lawyer's explanation of how Strata's damages experts would calculate losses attributable to market confusion. Strata Mot. 36. Strata argues that the remark is a fair recitation of its Second Amended Complaint and therefore is protected by fair reporting privilege because it does not carry a materially greater sting than the pleading. *Id.* at 36 (citing Sec. Am. Compl. ("SAC") ¶ 112, ECF 67).

LOA responds that Rafaeli attributed this finding to "the judge" when no such finding exists. Specifically, LOA relies on my January 2026 memorandum where I stated that "[a]t this early stage, a district court does not determine the veracity of a purportedly false statement but merely decides whether a complaint plausibly alleges falsity." LOA Resp. 4 (quoting *Strata Skin Scis., Inc*, 2026 WL 181486, at *5). This, LOA contends, is the opposite of finding that LOA disseminated fraudulent information. As to privilege, LOA argues that the statement is not mere embellishment of a court proceeding, but a plain fabrication and therefore Strata forfeits the privilege. *Id.* at 32.

Strata's Motion will be denied as to this third category of statements. At this stage, I do not choose between interpretations because LOA's reasonable interpretation steers the analysis. *See Pelagatti*, 536 A.2d at 1345. A statement that a federal judge deemed a competitor's information as fraudulent certainly imputes dishonesty in business and is capable of defamatory meaning as a matter of law. *U.S. Healthcare*, 898 F.2d at 923–24. I find that LOA adequately

pleads the elements a defamatory statement here and survives Strata's motion to dismiss.

*4. LOA fails to allege it was defamed by Strata's statements that Pallas lasers "do not technically work even close to" Strata lasers.*

LOA alleges that Mr. Rafaeli falsely stated that the Pallas lasers marketed by LOA "actually do not technically work even close to . . . the XTRAC" lasers marketed by Strata. Countercl. ¶ 12. Strata counters that this statement is true, as demonstrated by LOA's own exhibits. When he made this statement, Rafaeli was answering investor questions about why customers had returned to Strata and provided multiple reasons including "that these devices actually do not technically work even close to what the XTRAC does" and adding that LOA had not done "even one" clinical study to show that the two are equal. Strata Mot. 16 (quoting Strata Aug. 2025 Earnings Call Tr. at 13). Strata then points to the FDA 510(k) summaries that LOA relies upon, which Strata says establishes measurable performance gaps. *Id.* at 37–38.[4] Because those materials are incorporated into LOA's pleadings, Strata contends I may find the statement true now. Strata Reply 17–18; *Morrison v. Chatham Univ.*, No. 16-476, 2016 WL 4701460, at *4 (W.D. Pa. Sept. 8, 2016). Strata also insists that this cannot suffice for a defamation claim because it is an accurate recitation of Strata's allegations in its Second Amended Complaint. Strata Mot. 37; *see* SAC ¶ 88 ("[N]one of the Pallas Lasers . . . meet the technological, functional, and patented functional differentiators that distinguish the current STRATA Excimer Lasers . . . ."). It argues that Rafaeli's statement carries no greater sting than the SAC and is therefore protected by privilege. Strata Mot. 38.

LOA contends that the falsity of this statement is established by the regulatory decisions

[4] The differences that Strata pulls from the FDA letters include that the Pallas Premium delivers up to 5.0 mJ of pulse energy against the XTRAC's 15.0 mJ, a repetition rate of 300 Hz against 400 Hz, a fluence rate of 3.47 mJ/cm² against 3.8 mJ/cm², and a spot size of 18x18 mm against 20x20 mm. *Id.* (citing Countercl. nn.6–7 (citing FDA 510(k) Nos. K223588, K17263)).

of the FDA clearing the first-generation Pallas laser in 2017 as substantially equivalent to the XTRAC AL7000 and Pharos EX-308, and clearing the Pallas Premium laser in 2023 as substantially equivalent to Strata's XTRAC AL10000. Countercl. ¶¶ 72–74. LOA adds that the FDA required no clinical studies. *Id.* ¶ 75. It argues that based on the record, the statement is demonstrably false and defamatory. As to privilege, LOA argues the statement goes beyond merely repeating Strata's complaint and that the statement was made when Strata possessed contrary discovery materials, so any qualified privilege was abused. LOA Resp. 32–33.

Strata's Motion as to this fourth category of statements will be granted. Strata is correct that truth may be resolved now if it is apparent on the face of the pleading. *See Schmidt*, 770 F.3d at 249. And I am persuaded that the statements were true at the time that they were made. Substantial truth depends on the gist and the sting of the statement, and the test is whether the statement would have a different effect on the recipient's mind than the pleaded truth would have produced. *Dunlap*, 448 A.2d at 15; *Graboff*, 744 F.3d at 136. The FDA 510(k) submissions LOA relies upon document the performance disparities between Pallas and XTRAC lasers. Rafaeli's statement that "these devices actually do not technically work even close to what the XTRAC does" were responding to an investor's question about why customers had returned to Strata. When measured against the specifications documented in LOA's own exhibits, the gist of Rafaeli's remark is justified, and the pleaded truth would not have produced a materially different effect on the mind of an average listener. *See Masson*, 501 U.S. at 517. LOA's assertion that the FDA has determined the lasers to be "substantially equivalent" is not particularly helpful here because that is a regulatory designation meaning that a "device has the same intended use as the predicate device and either: (i) has the same technological characteristics as the predicate device or (ii) has different technological characteristics but does not raise different questions of safety and effectiveness than

the predicate device." Countercl. ¶ 74 (citing 21 C.F.R. § 807.100(b)). Such a designation is not the same as confirming equivalency of technical performance.

Further, Rafaeli's statement favorably comparing his company's product to another is much closer to merely competitive language than it is to defamation. The Third Circuit addressed a similar issue in *U.S. Healthcare* when it considered allegedly defamatory statements made during a comparative advertising campaign between direct competitors. 898 F.2d at 931. The Court found that advertisements that "either compare the competing health plans on one or more points, or simply criticize the competitor's health plan" lacked a cause of action because none "could be said to impute to the competitor by fair construction any 'fraud, deceit, dishonesty, or reprehensible conduct.'" *Id.* at 926 (quoting *Nat'l Ref. Co. v. Benzo Gas Motor Fuel Co.*, 20 F.2d 763, 771 (8th Cir. 1927)). The same reasoning applies here. Rafaeli's remark is a comparison about device performance. It does not impute any fraud, deceit, dishonesty, or reprehensible conduct and is therefore directed at the goods rather than the vendor. *See id.* at 924; *Brooks Power Sys. v. Ziff Commc'ns*, No. 93-3954, 1994 WL 444725, at *2 (E.D. Pa. Aug. 17, 1994).

*5. LOA fails to plead it was defamed by virtue of Strata's assertions that it violated a "very strict" AMA "policy of nonintervention of outside parties" and is, therefore, a "bad player."*

LOA pleads that Rafaeli falsely stated "that LOA violated a 'very strict' AMA 'policy of nonintervention of outside parties' and "actively manipulat[ed] things within the AMA,' which 'painted' LOA 'with the court' as 'bad players.'" Countercl. ¶ 10. Strata argues that Rafaeli never made that statement and that LOA created it by splicing together fragments from different parts of the transcript. Strata Mot. 38–39; Strata Reply 18–19. It provides the full quote:

> As part of the litigation, as part of the discovery in the litigation, we found that LaserOptek had a practice of approaching individuals within the organization that drafted the changes to the CPT codes, and they took part in making changes to these codes. That, when we found that was a big surprise for both ourselves, of course, as well as the American Medical Association that is responsible for these things, that has a very strict policy of

> nonintervention of outside parties. And I think it also painted their activities with the court the way it should have, which is they're bad players. And as bad players, they will end up paying.

Strata Mot. 38–39; Strata Aug. 2025 Earnings Call Tr. at 13. Following the next investor question, Rafaeli said, "[s]o when we found that LaserOptek was actively manipulating things within the AMA and as a result, impacting things that happen in the market, we approached CMS . . . ." Strata Mot. 39; Strata Aug. 2025 Earnings Call Tr. at 14. From Strata's viewpoint, Rafaeli described the AMA's policy and offered his personal take of LOA's conduct but did not assert that LOA "violated" AMA policy. Strata Mot. 39. As a composite statement that was never actually uttered, Strata maintains that it is incapable of defamatory meaning as a matter of law. *Id.*

Strata's Motion will be granted as to this fifth category. A statement not made cannot be defamatory, because Pennsylvania law requires the claimant asserting defamation prove "publication by the defendant." *See* 42 Pa. C.S. § 8343(a)(2). LOA pleads a statement that was an assembly of three separate remarks and thus a composite that was never uttered, and its purported justification for doing so is unpersuasive.

**C. Commercial Disparagement**

Based upon the same set of five statements, LOA separately alleges that Strata has committed commercial disparagement in violation of Pennsylvania law. Commercial disparagement requires that:

> (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will recognize in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (citing Restatement (Second) of Torts § 623(A)); *see also Neurotron, Inc. v. Medica. Serv. Ass'n of Pa., Inc.,* 254 F.3d 444, 448–49 (3d. Cir. 2001). A disparaging statement is one intended or reasonably

understood "to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality." *Menefee v. Columbia Broad. Sys., Inc.*, 329 A.2d 216, 220 (Pa. 1974) (quoting Restatement of Torts § 629 (1938)); *U.S. Healthcare*, 898 F.2d at 924 (same).

Strata argues that LOA fails to plead pecuniary loss with the necessary specificity and therefore all five statements must be dismissed for failure to state a claim. Strata Mot. 39. On this point, Strata is correct. LOA acknowledges that a disparagement claim ordinarily requires specific pleadings of pecuniary loss, but maintains that this requirement does not apply because its claim rises to the level of defamation *per se*. LOA Resp. 33–34. LOA argues that the pleading requirement is relaxed and that it sufficiently alleged a loss, because the statements caused its customers to "partner back" with Strata which "represents more than $1 million in annual capital." LOA Resp. 28; Countercl. ¶ 16. Strata replies that even on a *per se* theory, LOA must still plead sufficient facts to tender the theory plausible and that LOA's reliance on Rafaeli's statements about recovering "over 20" buyers fails because LOA never connects those customers with the challenged statements. Strata Reply 25–26.

The requirement to plead pecuniary loss "is relaxed where the disparagement claimed rises to the level of defamation *per se*, through publication which 'imputes to another conduct, characteristics, or a condition that would adversely affect her in her lawful business or trade.'" *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 416 (2009) (quoting *Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 241 (Pa. Super. Ct.1993)). "The recurring issue in this area lies in determining whether the derogatory publication gives rise to a cause of action for defamation, disparagement or both." *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 409 (E.D. Pa. 1983) (Luongo, C.J.). Commercial disparagement heavily overlaps with defamation because "in almost

every instance, the same statement can be interpreted as casting aspersions on the manufacturer as well as his product." *Id.* at 409. The offenses still remain distinct because an "action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their marketability, while defamation is meant protect an entity's interest in character and reputation." *U.S. Healthcare*, 898 F.2d at 924. Whether to apply the lesser standard depends on whether "by fair construction and without the aid of extrinsic evidence it imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct in its business in relation to said goods or product." *Id.* (quoting *Nat'l Ref. Co*, 20 F.2d at 771). In those situations, a plaintiff may merely plead reputational injury instead of specific pecuniary losses and named lost customers.

"Whether the words allegedly used by a defendant were defamatory *per se* is also a question for the court." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) (citing *Fox v. Kahn*, 221 A.2d 181 (Pa. 1966)). LOA pleads that each of the five statements are "defamatory *per se* because they were false accusations of business misconduct capable of affecting LOA's business." Countercl. ¶ 16. "Typically business misconduct refers to conduct that is illegal or connotes illegal activity." *I.M. Wilson, Inc.*, 500 F. Supp. 3d at 425 (quotation omitted). A plaintiff claiming *per se* defamation must still allege general damages, i.e., "proof that one's reputation was actually affected by the slander, or that she suffered personal humiliation or both." *Walker*, 634 A.2d at 246.

I have already dismissed the defamation claims concerning the first, fourth, and fifth categories of statements. Turning to the second category, LOA pleads that Strata told the market via press release in October 2025 that this Court had "ruled in STRATA's favor" and "partially granted STRATA's motion for preliminary injunction," then repeated the claim on a November

earnings call by saying that "an injunction [was] issued" in this action, and again told investors in the December investor presentation that Strata was "awarded an injunction against LaserOptek." Countercl. ¶¶ 13, 146. The only proof it offers that its "reputation was actually affected," *Walker*, 634 A.2d at 246, is Rafaeli's own assertion that Strata "purportedly 'partnered back' with 'over 20 . . . LaserOptek buyers,' which 'represents more than $1 million in annual capital and recurring revenue,'" Countercl. ¶ 16 (quoting November 2025 Earnings Call). Here, there are issues with the timeline. Two of the allegedly defamatory statements that purportedly caused LOA buyers to return to Strata occurred either during the same November earnings call or subsequent to it in the December investor presentation. Obviously those two statements could not have caused the general damages LOA alleges. All that remains is the October 2025 Press Release where Strata claims that I "ruled" in its favor. It is difficult to characterize this as defamation *per se*, and I am skeptical that this may be a situation where LOA is engaging in the classic tactic of framing claims as defamatory to avoid the heightened standards of disparagement. *See Zerpol Corp.*, 561 F. Supp. at 409; *Brooks Power Sys.*, 1994 WL 444725, at *3. Nonetheless, because I must accept a plaintiff's assertions as true at this stage, I find that LOA has cleared the lower bar *per se* defamation but only as to the October statement under its claim for commercial disparagement.

Finally, in its third category of defamatory statement, LOA plausibly pleads defamation *per se* as to its claim of commercial disparagement that Mr. Rafaeli falsely stated that I found information disseminated by LOA about Pallas and Strata lasers to be "fraudulent information." That statement was made in August. *See* Strata Aug. 2025 Earnings Call Tr. at 11.

Strata's motion to dismiss will be denied as to the second and third categories of allegedly disparaging statements but granted as to the first, fourth, and fifth categories.

**D. Unfair Competition**

As Strata concedes, LOA's claims for unfair competition in Count VII rest on its defamation and commercial disparagement claims. Strata Reply 24 n.19. Therefore, LOA's claims survive as to the second and third categories of defamatory statements.

**E. False Marking**

In Count V, LOA pleads false marking, asserting that Strata and Rafaeli violated 35. U.S.C § 292. Countercl. ¶¶ 159–71. This claim rests on Strata's September 2025 press release in which Strata announced that it "currently holds three key granted patents" covering combination therapies that pair its XTRAC laser with other treatments, and that those filings "establish intellectual property rights around combination therapies." Countercl. ¶¶ 160–62; Sept. 2025 Press Release at 2, ECF 95-2. LOA alleges that the three documents Strata lists, WO2021053673A1, US20220305282A1, and US20220296919A1, were merely patent applications. Countercl. ¶ 166. Claiming that a method is patented before a patent has been issued represents a literally false statement, and LOA alleges that Strata and Rafaeli intended to deceive the public. *Id.* ¶¶ 168–71.

To establish a claim for false marking under § 292, the claimant must demonstrate that: (1) "the defendant marked an unpatented article" (2) "the defendant intended to deceive the public" and (3) the claimant "'suffered a competitive injury as a result of the false marking.'" *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17-14, 2019 WL 10252725, at *15 (D. Del. Apr. 30, 2019) (quoting *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013)); *see* 35 U.S.C. § 292(b). Rule 9(b)'s heightened standard applies to the first two elements which are based in fraud. "[A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quotation omitted). An inference of intent to

deceive "from evidence that a defendant knew or should have known the marking was false." *Eyenavision, Inc. v. EnChroma, Inc.*, No. 21-00246, 2022 WL 783428, at *4–5 (W.D. Pa. Mar. 15, 2022) (quotation omitted). The third element, competitive injury, is a requirement of statutory standing and demands a plaintiff plausibly allege facts that the false marking impaired its "ability to compete against the opposing party in the market for purchasers of such products was impaired, resulting in tangible economic loss to the claimant." *Id.* at *6 (quotation omitted). These pleadings need not include specific instances of a competitive injury. *Id.*; *see also Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 624 (D. Del. 2014).

Strata moves to dismiss on the basis that LOA has failed to plead the third element. Strata Mot. 41–43. I disagree. LOA has satisfied the standard. As to the first two elements, LOA identifies each publication number, pleads that none of the numbers were issued patents, and alleges that Rafaeli is the sole inventor listed for each number (as well as an inventor on five issued patents that are not a part of the present case). *See* Countercl. ¶¶ 104–21. These allegations support the inference that Strata and Rafaeli have intent because they knew or should have known the representation was a false one. As to the third element, LOA adequately pleads that "resulted in Strata obtaining and maintaining a share of the market which would have gone and will go to LOA but for the advertising that the Publications are patents." *Id.* ¶ 170.

Strata's motion will therefore be denied as to Count V.

## IV. Conclusion

An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge